### ISRAEL CRAFTS & another *vs.* ELIAS HIBBARD & another.

A. and B., being tenants in common of a tract of land of 47 acres and 28 rods, A. conveyed to B. a part thereof, bounding it, in the deed, "north on land this day deeded to A. by B.;" and on the same day, B. conveyed the other part of the same tract to A., bounding it, in the deed, "south on land this day deeded to B. by A.; to contain 24 acres, more or less." *Held*, that the deeds were not void for uncer-tainty; that the deed from B. to A. was not to be construed to convey any precise quantity of land; but that there was a latent ambiguity as to the boundary between A. and B., which might be removed by extrinsic evidence. *Held also*, that evidence that A. and B., two years before said deeds were executed, had agreed to divide said tract, and caused a survey to be made of it, and had made a wall from the east to the west side of it, on the line of division indicated by the survey, and had ever afterwards severally occupied on each side of the wall, was sufficient to prove that

the wall was the boundary intended by said deeds. *Held further,* that parol evidence was not admissible to show, by way of controlling the foregoing evidence, that A. and B. agreed, when the survey was made, to divide the tract into equal parts, and that in consequence of a mistake in the survey, the wall was not made on the true line of equal division.

THIS was an action for a breach of a covenant of warranty in a deed conveying land in Whately.

The following report of the case was made by *Dewey,* J. before whom it was tried : The plaintiffs offered, in the first place, a common deed of warranty made to them by the defendants, dated May 4th 1830, conveying "a certain tract of land lying in Whately, on Eastern Mountain, so called, bounded as follows ; namely, beginning at the northeast corner of Seth Crafts's land, on a town way, running west on Seth Crafts one hundred and eleven rods ; thence south on Joel Munson ; thence east on Calvin Wells eighty-eight rods and three links, to a town way ; thence north on said way to the first-mentioned boundary, being twenty-eight rods and five links wide, containing seventeen acres and thirty-nine rods." The plaintiffs also offered two deeds ; one from Elijah Dickinson and others to John and Seth Crafts, dated December 17th 1790 ; and one from William Allis to the same, dated April 18th 1795 ; and it was agreed that the land conveyed by these deeds was the tract in controversy, and that the defendants are the heirs at law of said John Crafts. It was also agreed, that the plaintiffs entered into peaceable possession, under their said deed from the defendants, of May 4th 1830, and continued in such possession until the year 1834, when the said Seth Crafts dispossessed them of so much of the land thus entered upon, and claimed by them as conveyed by said deed, as lies between a certain stone wall and the northern line of the land thus claimed by the plaintiffs under said deed, being a strip 35 links in width and 30 rods and 10 links in length ; and that said Seth and his grantees have ever since continued in possession of said strip.

The plaintiffs here rested their case.

The defendants then introduced a quitclaim deed from Seth Crafts to John Russell and others, heirs of said John Crafts deceased, dated April 14th 1827, in which said Seth released

to said heirs " a certain tract of land lying in Whately on Eastern Mountain, so called, bounded east on a town way ; *north on land this day deeded to said Seth by the heirs of John Crafts;* west on Joel Munson's land ; south on land this day set off .to Lydia Crafts, and Eleanor Russell, wife of John Russell jr." Also a warranty deed of the same .date, from the heirs of said John Crafts to said Seth Crafts, conveying " a certain tract of land lying in Whately, on Eastern Mountain, so called, bounded east on a town way ; *south on land this day deeded to John Crafts's heirs by Seth Crafts;* west on Joel Munson's land ; north on Urotas and Simon Dickinson's land ; *to contain twenty-four acres more or less.*"

These deeds were offered by the defendants to prove a divis· ·ion of the land which was conveyed to said John and Seth Crafts by the aforementioned deeds of Dickinson and Allis. The plaintiffs objected, that the deeds, thus offered by the defendants, were void for uncertainty, inasmuch as the descriptions therein contained were not sufficient to designate the land.

The defendants then offered parol evidence to designate the land referred to in said deeds.   The plaintiffs objected tó the admission of this evidence : 1st. Because the alleged ambiguity was patent, and could not legally be explained by parol evidence : 2d. Because, if said deeds were not void for uncertainty, their legal effect would be to give to Seth Crafts one half of the premises to be divided, or else the exact quantity of twenty-four acres, being the quantity named in the deed from the heirs of John Crafts to said Seth Crafts.

For the purpose of the trial, the evidence offered by the defendants to explain the deeds and designate the land, was admitted.   It appeared by this evidence, that up to the year 1825, Seth and John Crafts occupied, in common, the whole of the tract conveyed by the abovementioned deeds of Dickinson and Allis ; that in 1825, they proposed to divide the premises between them, and for that purpose procured a survey to be made, and erected a fence near the centre of the lot, running across it ; which fence stood, and the principal part of

it still stands, on the north line of the land conveyed by the defendants to the plaintiffs. No deeds were exchanged at the time, nor was there any exclusive occupation on either side of the fence, until after the death of John Crafts, who died in 1826. After his death, the judge of probate issued a commission to David Stockbridge, Oliver Morton and John White, requiring them to assign dower to the widow of said John, and to sever and divide the estate, or any part thereof, from that of any other person with which the same might lie in common, and to divide the remainder of said John's real estate among his heirs. On the 13th of April 1827, said commissioners, in the discharge of their duties under said commission, met said Seth Crafts and the heirs of said John Crafts ; and it was proposed to set out to the parties, in severalty, as their respective shares, to said Seth, the land north of the fence aforesaid, and to the heirs of said John, the land lying south of said fence. The parties verbally assented to this proposition, and Dexter Crafts, the son and agent of said Seth, paid one dollar, on the part of said Seth, for the right of taking the part north of the fence.

Said David Stockbridge testified that the commissioners did divide the land between said Seth and the heirs of said John, taking the fence as the division line, but that no return of said division was made, nor was there any such division in writing under the hands of the commissioners.

In the further proceedings for dividing the land of John Crafts among his heirs, said commissioners treated and considered the said fence as indicating the dividing line between the land of said Seth and the land of the heirs of said John ; though the fence is not mentioned in the return of their proceedings.

The said Seth, and the heirs of said John, and those claiming under them, went into immediate occupation, and continued to occupy according to said fence ; said Seth occupying north, and said heirs, and those claiming under them, south of said fence, until 1834, when said Seth entered and dispossessed the plaintiffs, as above mentioned.

Dexter Crafts, a son of said Seth, testified that John White, one of the said commissioners, called on him and told him that

he (White) understood there was an agreement to divide the land, and that the commissioners would sanction it, and that they wished to have deeds passed, and that Calvin Wells, husband of one of the heirs of said Seth, was present at this conversation.

The plaintiffs then offered evidence, (the defendants objecting) from which it appeared that in the original survey, and in establishing the fence, it was the intention of the parties to divide the land into two equal parts. They also showed, by a survey made in August 1840, that the quantity of land was 47 acres and 28 rods, and was not equally divided by said fence, the north part falling short in quantity 117 rods of land. This error was discovered in 1834, by said Dexter Crafts; and there was no evidence that it was discovered before that time.

The plaintiffs also showed, that if said Seth Crafts had title to twenty-four acres, his land would extend over the land in controversy, as far south as the said stone wall.

By consent of the parties, the case was taken from the jury, under an agreement that if, upon such of the foregoing facts as were shown by competent evidence, and all proper inferences to be drawn from them by the court, the plaintiffs are entitled to recover, the defendants should be defaulted; otherwise, that the plaintiffs should become nonsuit.

*Davis & Alvord*, for the plaintiffs. The defendants' deed to the plaintiffs contains, in substance, a warranty that the land conveyed was 28 rods and 3 links in width, and 17 acres and 39 rods in quantity : In other words, it is to be collected from the terms of the deed and the facts in the case, that the grantors intended to convey all the land within the boundaries then visible and understood. The rule, that boundaries mentioned in a deed control courses, distances and quantities, is not applicable to this case. When the true position of a line between adjoining proprietors is unknown, and that line is referred to as a boundary in a deed which also gives courses, distances and measurement, then that line is not such a "fixed, known and unquestionable monument" as, in the language of the court, in *Pernam* v *Wead*, 6 Mass. 133, will govern courses, distances

and computed contents.   And where the line of actual ownership between adjoining proprietors differs from the line of occupation and supposed ownership, and the line between said proprietors is referred to as a boundary, in a deed which gives also distances and contents corresponding with the line of occupation and supposed ownership only, then said language shall be con·strued to refer to the line of occupation, for the purpose of giving effect to all tne parts of the deed, and carrying out the obvious intent of the parties.   See opinion of Bissell, J. 8 Connect. 26 – 34.   *Wooster* v. *Butler*, 13 Connect. 316.   *Tyler* v. *Hammond*, 11 Pick. 211.   *Davis* v. *Rainsford*, 17 Mass. 210.

The plaintiffs have been dispossessed of a part of the land warranted to them by the defendants, by Seth Crafts, who had a paramount title and a right of entry.   The defendants, however, will contend that said Crafts parted with his title, by his deed of April 14th 1827, bounding his grantees north on land that day deeded to him by the heirs of John Crafts.   But said Seth was bounded south, by a deed of the same date, on land that day deeded by him to the heirs of John Crafts.   No monuments or distances are given to designate this line between the two granting parties.   As each of these deeds refers to the other, they are to be construed together, as if they made but one instrument.   There is an ambiguity in these deeds, which is patent, and cannot be removed by evidence of extrinsic facts, because the parties have not referred to such facts. *Stackpole* v. *Arnold*, 11 Mass. 30.   *Peisch* v. *Dickson*, 1 Mason, 11.   *Allen* v. *Kingsbury*, 16 Pick. 239.   *Waterman* v. *Johnson*, 13 Pick. 261.   Extrinsic evidence, tending to prove, not what the party has expressed, but what he intended to express, is inadmissible.   3 Phil. Ev. (4th Amer. ed.) 1387.   This rule is illustrated by cases that seem not to be distinguishable from the one at bar.   See *Beaumont* v. *Field*, 2 Chit. R. 275.   *Webster* v. *Atkinson*, 4 N. Hamp. 23.   *Huntt* v. *Gist*, 2 Har. & J. 498. *Rich* v. *Elliot*, 10 Verm. 211.

The ambiguity being patent, and no extrinsic evidence being admissible to explain it, the deeds in question are therefore void

for uncertainty ; 2 Har. & J. *ubi sup.* ; unless they can be construed as importing an equal division of the land, or the deed to Seth Crafts can be construed to give him 24 acres, and the rest to John Crafts's heirs. The plaintiffs contend that the deeds may be construed to make an equal division. The parties were tenants in common, holding in moieties; and their manifest intention was to divide the land, and that Seth Crafts should take the northern part. And as no dividing line was intelligibly indicated in the deeds, the legal intendment is, that the division was into equal parts. This intendment is strengthened by the words " twenty-four acres, *more or less*," in one of the deeds — the whole tract being 47 acres and 28 rods ; so that 24 acres were *not exactly half* the contents of the tract divided. See *Treadwell* v. *Bulkley*, 4 Day, 395. *Beecher* v. *Parmele*, 9 Verm. 352. *Rich* v. *Elliot*, 10 Verm. 211.

But if the court reject the intendment that the division should be equal, then the deeds should be construed to give Seth Crafts 24 acres, and the rest to the heirs of John Crafts. The deed given to Seth is more guarded, in its form and phraseology, than the deed given by him. The deed to him contains a warranty, and describes the land as 24 acres, more or less. The deed given by him is a quitclaim, and mentions no quantity. As both deeds were made at the same time, this difference could not have been accidental ; but there must have been an intent to secure to Seth a specific quantity, without reference to the lines of occupation. The fact that the fence, which was on the line of occupation, is not referred to as a boundary, in either deed, shows that it was not intended to be such, and that the parties intended to fix the boundary by measure and quantity. The words "*to contain* 24 acres," &c. still more distinctly involve the presumption that the boundary contemplated was not then visible or ascertained. As the deed to Seth calls for no monument to control the general call for 24 acres, the words " more or less " must be rejected. *Cutts* v. *King*, 5 Greenl. 482. *Purinton* v. *Sedgley*, 4 Greenl. 286.

If, however, the court should not adopt these views, but shall hold that extrinsic evidence is admissible to explain the

ambiguity in the terms of the deeds, then the plaintiffs contend that the parol evidence, which was introduced at the trial, clearly shows the original intent of the parties that the land should be equally divided. The surveyor made a mistake, and the fence was erected in the wrong place in consequence of that mistake. But this mistake was not known to either party at the time when the deeds of division were made, and it was, at that time, the intention of both parties to divide the land equally. Both parties then supposed that the fence was on the true line of equal division. If, therefore, it be admitted by the plaintiffs that the parol evidence shows that, in the deeds, the fence was intended to be indicated as a boundary, yet that intent being the effect of a mistake of fact, and not being expressed in the language of the deeds, should be controlled by parol evidence, equally explicit, of the leading and original intent to make an equal division. See *Flagg* v. *Thurston*, 13 Pick. 150, 151.

All the points, on which the plaintiffs particularly rely, in the fixing of the boundary in question, seem to have been decided in their favor, in *Long* v. *Merrill*, 24 Pick. 157.

*I. C. Bates, Dickinson & Huntington*, for the defendants. The defendants have not broken their covenant of warranty, because they did not, in the description of the land in their deed, profess to convey more than was contained within certain abuttals, and are bound by the estimated quantity. The abuttals on every side being given, they must prevail over courses, distances and computed contents. *Howe* v. *Bass*, 2 Mass. 380. *Powell* v. *Clark*, 5 Mass. 355. *Pernam* v. *Wead*, 6 Mass. 131. *Flagg* v. *Thurston*, 13 Pick. 145. *Jackson* v. *Barringer*, 15 Johns. 471. *Jackson* v. *Wilkinson*, 17 Johns. 146. *Doe* v. *Thompson*, 5 Cow. 371. *Mann* v. *Pearson*, 2 Johns. 37. The plaintiffs, in order to escape from the operation of this rule of law, advance the position, that when an unknown boundary is referred to in a deed, such boundary will not control courses, distances, &c. If by this position it is meant or supposed that the line cannot be made certain, then it is nothing more than the truism, that a line purely imaginary is not fixed and known. But

the northern boundary, in the case at bar, is not an imaginary line, because that is certain, which can be made certain. And the other position of the defendants — viz. that when the line of occupation and supposed ownership differs from the line of actual ownership, and the line is referred to as a boundary in a deed that also gives distances, &c. corresponding with the line of occupation and supposed ownership, then the language shall be construed to refer to the line of occupation — will be found to conflict with the principles established in the cases above cited. This position admits the line of actual ownership to be known, and that the deed refers to it, and yet suffers it to be controlled by distances and contents ; or, what is worse, allows the admission of parol evidence to show a different occupation, and then, on the strength of the parol evidence, disowns the control of an acknowledged abuttal. The decision in the case cited from 8 Connect. to support the above positions of the plaintiffs, seems to be directly against them. And the dissenting opinion of Bissell, J. does not impugn the principles on which the present defendants rely. He only denied their applicability to the case before him.

The fallacy of the subsequent reasoning of the plaintiffs' counsel consists in supposing that Seth Crafts's southeast corner and southern boundary are ideal points or lines. It must have been on this supposition that they cited 13 Connect. 316. In *Tyler v. Hammond*, 11 Pick. 211, cited for the plaintiffs, the question was as to the effect of a general sweeping clause upon a particular and minute previous description, and whether a fee in a road could pass as appurtenant to land. And in *Davis v. Rainsford*, 17 Mass. 210, the court relied much on the fact that it was impossible that a mistake of 2 feet 3 inches should be made in measuring a line of one foot 2 inches, which the deed called for. There was also, in that case, a plan on the back of the deed, corresponding with the description in the deed. In both these last mentioned cases, the land conveyed was in a populous city. So also in the case in 8 Connect. ; and that fact affected the judgment of Bissell, J. in that case.

The deeds of April 14th 1827 are not void for uncertainty.

No deed is void for that cause, if it can be made good by any construction. Where an uncertain grant may be reduced to a certainty by the grantee, it is good. Bac. Ab. Grants, H. 2 Bl. Com. 379. *Webber* v. *Webber*, 6 Greenl. 127. In *Blake* v. *Doherty*, 5 Wheat. 363, Marshall, C. J. said a grant was not void for uncertainty, if the court could imagine testimony which would show any particular monument to be that which is called for in the grant.

. Nor do the deeds in question present a case of patent ambiguity which cannot be explained by evidence *aliunde*. Each of these deeds is, on its face, like every other deed which calls for abuttals. It calls for extrinsic evidence, as much as if it had referred, for a description, to another deed on record in the registry office. It is the constant practice to resort to the registry for proof in such a case. The difficulty, which raises the present question, arises from a reference in each of the deeds to the other ; so that neither explains the other. But if extrinsic evidence may be resorted to, when a deed calls for it, it is immaterial whether that evidence consists of things written or things done. No rule of law requires that evidence *aliunde*, in such case, should be in writing. The defendants do not contradict or vary the deed under which they claim, by parol evidence, but merely apply the instrument to the subject matter. And the authorities warrant the introduction of such evidence for such purpose. 3 Stark. Ev. 1021. 6 Mass. 440. *Makepeace* v. *Bancroft*, 12 Mass. 472. *Waterman* v. *Johnson*, 13 Pick. 267. *Dryden* v. *Jepherson*, 18 Pick. 390. *Stone* v. *Clark*, 1 Met. 380. *Owen* v. *Bartholomew*, 9 Pick. 526. *Allen* v. *Bates*, 6 Pick. 460. *Sparhawk* v. *Bullard*, 1 Met. 102. *Frost* v. *Spaulding*, 19 Pick. 446. *Clark* v. *Munyan*, 22 Pick. 410. *Jackson* v. *Ogden*, 7 Johns. 241.

Suppose that in the deeds, instead of bounding "on land this day deeded," &c. the description had been thus, "on land of Seth Crafts," or "on land of which the possession has this day been surrendered to Seth Crafts" : Would not evidence *aliunde* be admissible to show of what land the possession had been surrendered ? It is insisted by the plaintiffs, that the deeds

are to be construed as one, and therefore the ambiguity is patent. But the parties in fact made two separate deeds, in neither of which is there a patent ambiguity, though there is a latent one in both ; and the court will not convert a latent into a patent ambiguity, by construing the two deeds as one, and thus vary the rights and defeat the intentions of the parties.

The deeds did not operate to make an equal division of the tract of land. No such intention is indicated on the face of them. On the contrary, they rebut the presumption of an equal division, as one of them conveys "24 acres, more or less," when an equal division would give to each $23\frac{1}{2}$ acres and 14 rods. Besides ; a rule of construction, that would make this division into equal parts, would work injustice where one part of a tract is more valuable than another by reason of quality of soil, &c. or access to roads.

Parol evidence is not admissible to prove a mistake in the survey of 1825, nearly two years before the division by deed. Such evidence has no bearing on the evidence *aliunde* produced by the defendants. The fence, and not equal measure, was referred to when the deeds were made, and nothing was said about equality. Such evidence is, therefore, irrelevant. In *Howe* v. *Bass*, 2 Mass. 382, Parker, J. says a purchaser of land naturally estimates its quantity and value by the fences that enclose it, or other fixed monuments. The effect of admitting such evidence would be to authorize a parol division of lands, against the statute of frauds, and the decision in *Porter* v. *Perkins*, 5 Mass. 235. There were no acts of the parties, no declarations, and no occupancy between 1825 and 1827, which tend to show an equal division ; but every thing said and done was inconsistent with the notion of such a division. And in ques tions of title, agreements which are not followed up by acts, are not binding. 7 Johns. 244, 245. See also *Whistler's case*, 10 Co. 63. Again ; if any agreement for an equal division was made in 1825, by Seth and John Crafts, the knowledge of it is not brought home to John's heirs, who made the division with Seth in 1827. The parties to that division and to the supposed agreement to divide were not the same.

The deed to Seth Crafts from the heirs of John Crafts does not convey 24 acres. Its language is " 24 acres, more or less." Seth, or those claiming under him, admitted, when the wall was built in 1834, that this deed did not cover 24 acres ; for the wall was built on the principle of equal division, and not so far south as to include 24 acres. There has been no eviction of the plaintiffs on the principle that 24 acres were conveyed to Seth ; and this is a sufficient answer to this action for breach of the covenant of warranty. The words " more or less " import that the precise quantity is not warranted. 1 Chit. Gen. Pract. 180. 2 Johns. 37, 41. *Clark* v. *Munyan,* 22 Pick. 410. *Blaney* v. *Rice,* 20 Pick. 62. Finally ; parol evidence, if admissible, rebuts the claim to 24 acres.

The case of *Long* v. *Merrill,* 24 Pick. 157, does not conflict with the position taken by the defendants in the present case.

*Wells,* in reply. The position taken and the authorities cited by the defendants' counsel have not much affected the grounds upon which the plaintiffs rest their case.

It has been said that as the deeds in question were made separate, they cannot be construed together, though made at the same time. The rule laid down in a note to 1 Chit. Con. (5th Amer. ed.) 90, and sustained by the cases there cited, is this : " Several instruments in writing, made at the same time, be- tween the same parties, and relating to the same subjects, constitute but one agreement."

The cases cited for the defendants, in which it is said by courts that where the language of a deed is doubtful, the acts and contemporaneous construction of the parties are entitled to great weight, are, in every instance, cases of latent ambiguity ; and the language, though general, must be regarded as intended to apply only to the class of cases then under consideration. It has not been contended expressly, by the defendants' counsel, that extrinsic evidence can be heard to explain a patent ambiguity, or that the rule which excludes such evidence has been exploded by the decisions which they have cited ; yet their application of those decisions leads to that result. Nor have they succeeded in their attempt to show that the ambiguity in the

38 *

deeds is a latent one. If the deeds had referred for a northern boundary to " land of S. Crafts, &c., or of which the occupation has been this day surrendered to S. Crafts," &c., doubtless the ambiguity would have been latent and might have been removed by parol evidence. Those words would have been construed as referring to land owned or occupied by the grantor in a northern direction, and they would have called for explanatory evidence *aliunde*. But in the case at bar, each deed calls for the description in the other, and is limited to that, and repudiates any other description. If the deeds contain within themselves a sufficient description, the court, in travelling out of the deeds for evidence of intent, makes a contract for the parties, which they did not see fit to make for themselves, by the writing in which they sought to embody it.

The plaintiffs' case stands on the broad distinction between language which calls for evidence of location, and language which repudiates such evidence; between language which at once, on inspection of the deeds, suggests a doubt as to their meaning, and language which, until it comes to be applied to the actual state of facts, is unambiguous

As to the division alleged to have been made between Seth Crafts and the heirs of John Crafts, and referred to in the subsequent deeds, and on which the defendants place great reliance — it is sufficient to say that not one of those deeds mentions the fence as a boundary, or throws any light upon what was agreed on as a boundary line. What was the boundary is still to be ascertained from the highest evidence, namely, a sound construction of the deeds which were interchanged on the 14th of April 1827.

DEWEY, J. To entitle the plaintiffs to maintain their action for a breach of the covenant of warranty contained in the deed of the defendants, they must show affirmatively a superior outstanding title in a third person, who has entered upon the land, or some portion of it, under such title, and ousted the plaintiffs. 4 Mass. 410, 442. This position they have endeavored to maintain by the evidence which they have introduced of title in Seth Crafts in a part of the premises conveyed, and an entry by

him in 1834. The defendants deny any such title to the premises in Seth Crafts, as is alleged, and it is upon this question that I shall proceed to state the opinion of the court.

It is agreed that the said Seth Crafts and John Crafts were, in the year 1825, tenants in common of a parcel of land containing about 47 acres, and embracing, as a part thereof, the parcel now in controversy. On the 14th of April 1827, said John Crafts having deceased, certain conveyances were made between his heirs and Seth Crafts, by which the northerly part of the land formerly owned in common was conveyed to said Seth, and the southerly part to the heirs of said John ; and the precise point of controversy is as to the construction of the deed from Seth Crafts to said heirs, and whether it conveyed the land now in question. The language of this deed is thus : " A certain tract of land, lying in Whately, on Eastern Mountain, so called, and is bounded as follows ; east on a town way, north on land this day deeded to Seth Crafts by the heirs of John Crafts, west on Joel Munson's land, south on land this day set off to Lydia Crafts and Eleanor Russell."

It is quite obvious that the location of the premises, intended to be conveyed by this deed, is to be ascertained by reference to extrinsic evidence. As they are described on all sides by reference to lands of other persons, we must go out of the deed to ascertain precisely where the boundaries are. Upon the face of the deed there is no such ambiguity as calls for any legal construction ; and although it refers to other title, yet for aught that appears upon the deed itself, its references, when resorted to, as they necessarily must be, may furnish a clear and well defined boundary in every part. And as to all the boundaries except that on the north, such, it is conceded, has been the practical effect. But, upon recurring to the description, by way of reference, for the northern boundary of the land conveyed, it seems that the deed referred to is itself ambiguous, having three well defined sides, but having its southerly boundary thus ; " south on land this day deeded to John Crafts's heirs by Seth Crafts." Upon this state of facts as to the northern boundary of the land conveyed by Seth Crafts to the heirs of John

Crafts, it is suggested by the counsel for the plaintiffs, that this conveyance must be held void for uncertainty. But we think that this position cannot be maintained. A deed is not to be held void for uncertainty, if by any reasonable construction it can be made available. By the description in the two deeds, three of the four sides in each parcel are well defined, and the only doubtful line is that which divides the two parcels, running east and west. Taken together, the two deeds embrace a tract of land having certain and well defined boundaries on all sides ; and if there were no extrinsic evidence to aid in fixing the location of the disputed line, or if such evidence were inadmissible, the law would furnish a rule of construction for establishing the dividing line between the adjacent owners.

The next inquiry is, whether the parol evidence, offered in the present case by the defendants, tending to establish the true location of the line in controversy, was admissible. It is well settled that parol evidence cannot be introduced to contradict or control the language of a deed ; but it is equally well settled, that latent ambiguities may be explained by such evidence. Facts existing at the time of the conveyance, and prior thereto, may be proved by parol evidence, with a view of establishing a particular line as the one contemplated by the parties, when such line is left, by the term of the deeds, ambiguous and uncertain. This doctrine, the reasons of it, and the extent to which it is competent to resort to such parol testimony, are fully stated in the case of *Waterman* v. *Johnson*, 13 Pick. 266. In the cases of *Frost* v. *Spaulding*, 19 Pick. 445, and *Clark* v. *Munyan*, 22 Pick. 410, evidence of the acts of the parties soon after the making of the conveyance were held admissible in aid of the construction to be given to a boundary which was ambiguous. The same rule was adopted in *Owen* v. *Bartholomew*, 9 Pick. 520. It was perhaps more broadly and distinctly stated in the recent case of *Stone* v. *Clark*, 1 Met. 380, in which it was held "that when the construction of a deed is doubtful, great weight is to be given to the construction put upon it by the parties, especially in doubtful questions of boundaries."

The principles recognized in the cases above cited would

seem fully to warrant the admission of extrinsic evidence of the actual state of things, as to the monuments existing at the date of the deed, indicating the southern line of the Seth Crafts's lot, and any acts of the parties, subsequent to the execution of the deed, by which they may have given a practical construction to the same.

In looking at the evidence offered for this purpose, it seems to us to have a strong bearing, and to be quite sufficient to satisfy us as to the intent of the parties to this conveyance. It appears from the evidence reported in the case, that at the time of executing the deed of Seth Crafts, there was a fence near the centre of the lot, and running across it ; that upon the execution of the deeds between Seth Crafts and the heirs of John Crafts, the parties thereto, and those claiming under them, went into immediate occupation, and continued this occupation until the year 1834, when this controversy arose ; each party occupying up to the line of the fence, and treating the fence as the division line on the north, separating the land of Seth Crafts from that of John Crafts's heirs. This evidence of the existence of the fence and of the acts of the parties shows very clearly how they understood the conveyance in reference to the northern line of the land of John Crafts's heirs. The construction thus put upon this deed, by the parties thereto, may properly be taken to be the true construction, unless it be contradictory to the language of the deed itself; and we do not perceive any sufficient ground for asserting that such contradiction exists.

In coming to this result, it may be proper to remark, that we have not been influenced by the evidence offered by the defendants as to the original division made between Seth Crafts and John Crafts, nor the division among the heirs of John Crafts.

It is urged, .however, that if parol evidence be admissible at all, to give a construction to this deed, it would authorize the admission of the testimony offered by the plaintiffs, that in making the original survey and erecting the fence, in 1825, preparatory to a proposed division, it was the intention of the parties to divide the entire lot into two equal parts, and that through some mistake in the admeasurement, it was not thus equally

Crafts & another *v.* Hibbard & another.

divided, but that the northerly part was somewhat short in the quantity that should have been assigned to it.

We think this evidence is not of such character as renders it competent to control the testimony relied upon by the defendants to give a construction to the deed of Seth Crafts. Nor do we think that the reference to the quantity of land contained in the premises, conveyed by John Crafts's heirs to Seth Crafts, creates any such repugnance of description to that which results from establishing the existing fence as the true line, as should affect the view we have taken of the case. The part of the description referred to is as follows, viz. after reciting the boundaries on the adjacent lots, it then adds, " to contain twenty-four acres, more or less." The words " more or less," here used, clearly import that no precise quantity of land was assumed to be conveyed by this deed.

It was strongly urged by the counsel for the plaintiffs, that the facts show a case of patent ambiguity, taking the two deeds together, and that this necessarily must exclude all the proposed evidence, as inadmissible to aid in the construction. This view of the case has not, however, been sanctioned by the court.

Some reliance was also placed by the plaintiffs' counsel upon the decision of this court, in the case of *Long* v. *Merrill*, 24 Pick. 157. It is true that in that case the evidence offered was not allowed to control in the construction of the deed ; but, as it seems to us, it was presented under different circumstances and was of a character much less decisive than the evidence offered in the present case. Without impugning the authority of that case, we have been brought to a different result, and have here given force and effect to the evidence offered.

In the opinion of the court, the present is a case where the language of the deed is ambiguous, and where evidence of existing monuments, not referred to in the deed, as well as the practical construction given by the acts of the parties, is properly admissible to aid in determining the true boundary line ; and in giving proper effect to this evidence, we think that the defence is well maintained upon the question of boundary.

Without expressing any opinion upon the other ground of

defence, presenting the question whether the covenant was for a certain and definite quantity of land by admeasurement — for the reasons stated upon the question we have had under consideration, the court are of opinion that this action cannot be maintained.

*Plaintiffs nonsuit.*